IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. CCB-17-00380 |
| | * | |
| SHANNON STAFFORD | * | |
| | * | |

**************

## GOVERNMENT'S SENTENCING MEMORANDUM

Immediately after he was fired, the defendant used his special knowledge of his former employer's computer networks and passwords to delete the entire file system of the company's Washington office. He sought to cripple their business simply because he was terminated from his job for poor performance. The company quickly identified him and demanded that he stop—a clear opportunity for the defendant to reconsider and move on. Instead, the defendant doubled- and tripled-down. Over several weeks he tried on dozens of separate occasions to access the company's networks again—abusing the credentials of former colleagues who trusted him to help. The defendant laid siege to his former employer's networks for weeks, and did, finally, get in again. Once in, the defendant sought access to a second file system in Baltimore in an attempt to cause further harm. He failed to do so only because the company had changed the passwords the defendant had knowledge of after the first attack.

The defendant had many opportunities to reconsider his criminal activity. He declined to do so. Instead, he took advantage of the trust of his colleagues and employer to cause thousands of dollars' worth of damage—and flagrantly continued his efforts to harm them even after being identified and told to stop. His campaign to damage the company's systems was serious and deserves serious punishment. For the reasons set forth below, the defendant should be sentenced to two years in prison.

## I. PROCEDURAL POSTURE

On November 15, 2019, following a four-day trial, the jury returned a verdict finding the Defendant guilty on both counts of the indictment. Sentencing is currently scheduled for Friday, March 20, 2020, at 9:30am.

## II. FACTS PROVEN AT TRIAL

### A. The Defendant was Fired from Business A's IT Department

The defendant was an information technology (IT) employee of Business A from January 2004 until his termination on August 6, 2015. Business A is a global company with thousands of employees, and offices around the world, including in Maryland and Washington, D.C. The defendant was based in the company's Washington office and provided IT technical support and assistance for employees based at or visiting the Washington, D.C., McLean, Virginia, and Baltimore, Maryland offices. In July 2014, Business A purchased a MacBook laptop for the defendant to use in the course of his employment.

In the spring of 2014, the defendant was promoted to the managerial role of technical site lead for the Washington office. In March 2015, the defendant was demoted back to an IT support role, due to performance issues in his management position. The defendant's performance issues continued after his demotion, and he was fired on August 6, 2015. He did not return the MacBook after his termination, in violation of company policy.

As part of his regular duties during his employment, the defendant had access to the system login credentials of other employees, including V.B., and L.S. Business A authorized the defendant to use the system login credentials of other employees in the course of performing his technical support duties. The defendant was also responsible for disabling company users' network access credentials at the end of their employment.

### B. The Defendant Deleted Business A's Entire Washington, D.C., File System

On the night of Thursday August 6, 2015, the date he was fired, the defendant repeatedly attempted to remotely access Business A's computer networks from his residence in Crofton, Maryland, using the company's laptop. The defendant unsuccessfully attempted to access the company's network without authorization approximately 10 times, using his own user credentials and credentials that were not his, including the credentials of V.B., a former coworker who shared her password with him in the weeks before he was fired.

In the early-morning hours of Saturday, August 8, 2015, the defendant used V.B.'s credentials to remotely access Business A's computer systems from his home without authorization using the company's laptop. During his unauthorized access, the defendant accessed the computer in the company's Washington office that had been located under his desk. The defendant used the Washington IT computer to execute commands to delete all six Storage Area Network file storage drives used by the company's Washington office. The deletion of these files caused severe disruption to the company's Washington operations and the loss of some customer and user data. As a result of the defendant's deletion of the network file storage drives, Washington users were unable to access their stored files for approximately 36 hours, until the deleted data could be restored from backups. All customer and user data that was not included in the most recent backup prior to the defendant's deletion of the files was permanently lost.

After deleting all of the Washington office's stored files, the defendant changed the password to access the file storage management system, hindering the company's efforts to determine what happened and restore access to its remaining files. Business A expended significant resources responding to the defendant's conduct, including bringing in IT support staff from out of state to address the issue, having IT staff work overtime and on the weekend, and

spending more than $20,000 to hiring a private incident response firm to investigate the incident and mitigate the damage.

### C. The Defendant Continued to Attempt to Access and Damage the Network

On August 11, 2015, the defendant unsuccessfully attempted to remotely access Business A's computer network from his home approximately 13 times, using credentials that were not his. On August 13, 2015, company representatives spoke to the defendant and demanded that he cease and desist his unlawful access to the company's systems. On August 21 and September 9, 2015, the defendant attempted to access the company's computer network from his home approximately 17 times, using credentials that were not his.

On September 14, 2015, the defendant used the credentials of L.S. to access Business A's computer network without authorization from his residence in Crofton, Maryland. L.S. was an employee of Business A whose network credentials the defendant obtained when he provided her technical assistance. During this unauthorized access, the defendant attempted to access a network file storage system computer he had been responsible for maintaining in the IT department of the company's Baltimore office, with the intent to cause the same type of damage he caused when he deleted the Washington office's stored files. The defendant's attempt to access the Baltimore file storage failed because the victim company changed the password after the defendant's attack on the Washington files.

## III.   THE ADVISORY GUIDELINE SENTENCE IS 21-27 MONTHS IN PRISON

The government concurs with the guidelines calculation set forth in the presentence investigation report ("PSR"). Dkt. #93:

| GUIDELINE | U.S.S.G. § | OL |
|---|---|---|
| Base[1] | 2B1.1(a)(2) | 6 |
| Loss ($59,307.50) | 2B1.1(b)(1)(D) | +6 |
| 18 U.S.C. § 1030(a)(5)(A) | 2B1.1(b)(19)(A)(ii) | +4 |
| Abuse of Trust/Special Skill | 3B.1.3 | +2 |
| **TOTAL** | | 18 |

For the purposes of U.S.S.G. § 2B1.1(b), "loss" means "reasonably foreseeable [monetary] harm." U.S.S.G. § 2B1.1, App. Note 3(A)(i). In the case of offenses under 18 U.S.C. § 1030, "loss" under the Guidelines also includes "the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other damages incurred because of interruption of service." U.S.S.G. § 2B1.1, App. Note 3(A)(v)(III).

The actual loss to Business A resulting from the defendant's damage and attempted damage to their computer systems, including the cost of restoring the deleted systems, investigating what happened, and responding to the intrusion, is conservatively estimated by the victim to be $38,270. This estimate reflects the value of the employee time committed to responding to and repairing the initial damage and investigating the repeated attempts to access the victim's networks between August 8 and September 15, 2015. This estimate could but does not include costs for further protective measures against potential intrusions taken by the victim after September 15, given that the victim did not know at the time whether the defendant had ended his campaign. This estimate also could but does not include the costs for a forensic investigation by cybersecurity firm CrowdStrike ($21,037.50 plus $39,574.50 in attorney's fees). The evidence shows that this forensic investigation was commissioned as a direct result of the defendant's intrusion on August 8 and his further attempts to damage the victim's computer systems after the initial destruction of

---

[1] The offenses set forth in Counts One and Two group, pursuant to U.S.S.G. 3D1.2(b)

data. Thus, an extremely conservative estimate of actual loss for the purposes of the Guidelines is more than $15,000 but less than $40,000. Therefore, there should be an increase of four levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(C).

There is an additional increase of two levels, pursuant to U.S.S.G. § 3B1.3, because the defendant abused a position of private trust, and used a special skill, in a manner that significantly facilitated the commission or concealment of the offense. The defendant used his training as an information security specialist and his specialized knowledge of Business A's networks to commit these offenses. Trial testimony established that the defendant had special access to the victim's file storage systems and a knowledge of their maintenance available to only a handful of employees. Furthermore, he obtained the credentials of his former coworkers as part of his trusted position as an information technology professional, and used those credentials to commit the offenses.

The resulting combined adjusted offense level should be 16. With an offense level of 16, and no known prior convictions, the defendant's expected advisory guidelines sentencing range is 21-27 months in prison. For the reasons set forth below, a within-Guidelines sentence of two years in prison is sufficient, but no more than necessary, to accomplish the goals of federal sentencing law and policy.

### IV.     THE DEFENDANT SHOULD BE ORDERED TO PAY $193,258.10 IN MANDATORY RESTITUTION TO BUSINESS A

Restitution is mandatory for the charged offenses because they are crimes against property under Title 18 of the United States Code. 18 U.S.C. § 3663A(c)(1)(ii). The restitution order must reimburse the victim for the value of any loss, damage, or destruction of his property, and for all lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense. 18 U.S.C. § 3663A(b)(1) and (b)(4).

Here, the estimated restitution the government submitted for the purposes of the PSR inadvertently failed to consider the Supreme Court's decision in *Lagos v. United States*, which holds that the statute only requires restitution expenses incurred during participation in the *criminal* investigation or prosecution of the offense or attendance at *criminal* proceedings related to the offense. 138 S. Ct. 1684, 1690 (2018). The government therefore concedes that the victim is not entitled to restitution for work done to prepare for prosecution before the government actually opened its criminal investigation, estimated by the victim at approximately $42,749.93 in internal costs and attorneys' fees. However, the victim is entitled to reimbursement for the costs related to the forensic investigation by an outside consultant, which the victim company witness testified at trial was a step taken to assess and mitigate the property damage incurred and at risk from the defendant's repeated intrusions. The government's revised estimate of the mandatory restitution to which the victim is entitled is $193,258.10, based on the following costs identified by the victim directly and proximately caused by the destruction of property by the defendant and the costs of participating in the subsequent criminal investigation and proceedings:

- **$38,270**: In direct losses to Business A, including the internal costs of restoring the deleted systems, investigating what happened, and responding to the intrusion;

- **$21,037.50**: Fees to the outside consultant, CrowdStrike, who conducted a forensic investigation of the intrusions.

- **$133,950.60**: Fees to outside counsel, Willkie Farr & Gallagher LLP, who oversaw CrowdStrike's investigation and provided legal advice and representation as required in response to requests from law enforcement. These fees include:
    - **$39,574.50** to respond to the attack and work with CrowdStrike on recommendations; and
    - **$94,376.10** to respond to subpoena and document requests from the U.S. Attorney's Office, including in connection with trial preparations.

Thus, **$193,258.10** is a reasonable estimate of the losses to Business A that fall within the scope of the mandatory restitution statute.

## V. THE DEFENDANT SHOULD BE SENTENCED TO TWO YEARS IN PRISON

Two years in prison is a just sentence for these serious crimes after considering the advisory sentencing guidelines and all of the factors set forth in 18 U.S.C. § 3553(a)(2), including the seriousness of the offense, the need to provide just punishment, and the need for the sentence imposed to deter others from similar conduct.

The nature and circumstances of the defendant's offenses call for a significant sentence of imprisonment. From August to September of 2015, defendant embarked on a malicious campaign to damage his former employer using his unique knowledge of and access to the company computer systems he had been entrusted to maintain. Over the course of hours, the defendant took a number of steps through multiple systems with multiple passwords until he successfully deleted the entire file system for the company's Washington office. After deleting all of the office's stored files, he changed the password to the file storage system which significantly hindered the company's ability to diagnose and repair the damage by preventing the company from accessing its own system. His malicious actions on that night, soon after he was fired, are alone worthy of significant punishment.

A two-year sentence is further justified by the defendant's relentless attacks on the company's systems even after they determined he was responsible. Once the defendant was identified as the likely perpetrator, the company demanded that he cease and desist. Nevertheless, with full knowledge that his access was unlawful and unwelcome, the defendant tried again and again to get into the company's computer system, masquerading as the former coworkers who once sought his help and support. When he did successfully regain access, he tried to get into yet another file system to cause yet more damage—and only failed because he no longer knew the password. Committed weeks after his firing, these felonies were not crimes of opportunity or in

the heat of passion. Rather, for over a month, the defendant engaged in deliberate, persistent efforts to damage protected computers to retaliate against the company who fired him.

Though he does not have a criminal record, the history and characteristics of the defendant further support a significant sentence. The defendant's long history of positions of trust and responsibility at Business A placed him in a unique position to cause damage to the company. He had been trusted with the care and maintenance of the file systems and the credentials of his coworkers. He knew the vulnerabilities of the system and the weaknesses in the company's cyber-defenses. He chose to use that knowledge to cause harm, and he did so even after given multiple opportunities to cease and desist. The defendant exploited the trust of his colleagues and the special skills available to him as a technical expert to repeatedly seek to damage his former company's networks—and, indeed, to cause substantial damage on August 8, 2015.

A two year sentence would reflect the seriousness of this crime, promote respect for the law, provide just punishment for such significant damage to protected computers, and afford adequate deterrence from criminal conduct. At trial, the Court heard from representatives of Business A about the significant financial losses suffered by the company after the deletion of all their operating file systems, as well as the disruptive steps necessary to mitigate and defend against the defendant's further efforts to attack the company over the next month. The Court also heard from former coworkers of the defendant who had trusted him with their credentials in order to get reconnected to the company network and do their jobs. And then he turned around and used those same credentials to break into the company's computers and make their jobs harder.

A significant sentence is particularly necessary to afford adequate deterrence from criminal conduct. At a time when nearly every business relies on connectivity and functioning technology, it is more important than ever to ensure that there are consequences for criminal damage to

computer systems. Companies should not be held hostage by their technical employees out of fear that they will destroy the company's computer systems if terminated. Similarly situated defendants have been convicted to similar sentences. For example, a California web producer and network site administrator was sentenced to 24 months in jail for unauthorized accesses after his termination to obtain company files and promote defacement of his former employer's websites. *United States v. Keys*, No. S-13-0082, Doc. No. 154 (E.D. Cal. May 5, 2016) (Judgment). And a computer programmer in Maryland was sentenced to 41 months in prison for transmitting malicious code to his former employer's computers after his termination. *United States v. Makwana*, Case No. JFM-09-00043, Doc. No. 62 (D. Md. Dec. 17, 2010) (Judgment)

In addition to a term of two years' imprisonment, the Court should impose a term of two years of supervised release. This will enable the Court to successfully manage the defendant's transition back into the community, and ensure that he complies with the continuing financial obligations of his sentence.

The defendant's efforts against his employer were an egregious abuse of trust that resulted in wanton destruction and disruption of a global company's computer systems. A two year sentence is necessary to make clear to the defendant that his unique capabilities as a technical expert do not give him the right to criminally retaliate against the company who fired him.

## VI.     CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a sentence of 24 months' imprisonment, followed by two years of supervised release, and order the defendant to pay $193,258.10 in mandatory restitution.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:     /ss/
Zachary A. Myers
Assistant United States Attorney

S. Riane Harper
Trial Attorney
